**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**BARBARA J. SIMMONS**
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SAMANTHA BRADLEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1106-CR-513 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Rebekah Pierson-Treacy, Judge
The Honorable Shatrese Flowers, Master Commissioner
Cause No. 49F19-1012-CM-90373

**January 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Samantha Bradley appeals her convictions for Class A misdemeanor criminal trespass and Class A misdemeanor resisting law enforcement. We affirm.

## Issues

Bradley raises two issues, which we restate as:

    I.      whether there is sufficient evidence to support her criminal trespass conviction; and

    II.     whether there is sufficient evidence to support her resisting law enforcement conviction.

## Facts

On November 14, 2010, and November 16, 2010, Bradley had surgery on her forearm and received twenty-two stitches. On December 2, 2010, Bradley had an early evening doctor's appointment for follow-up care at a medical office building associated with St. Francis Hospital in Indianapolis. Bradley and her friend, Channing Lutz, were driven by another friend from Columbus, where they lived, to the doctor's office. Bradley arrived at the doctor's office at 6:30 p.m. and learned that she had missed the appointment. In the meantime, the friend who had driven them left to go to work. Eventually, Lutz contacted her mother who agreed to come pick them up. Lutz and Bradley stayed in the building while they waited for Lutz's mother to drive from Columbus.

Tiffany Martin was a project manager for Executive Management Services, which was responsible for cleaning and taking care of the building. Between 7:00 and 7:30 p.m., Martin, who oversees two buildings, received a phone call from an employee

2

indicating that the two women were still in the building. When Martin arrived at that building, Bradley was "passed out" in a wheel chair. Tr. p. 35. Martin told them the building was closed and they had to leave. Eventually, they left to walk to the emergency room as Martin had suggested, but they came inside because it was cold. Martin informed her manager that the two women had left and come back, Martin's manager called security, and security called the police.

When police officers arrived, Officer Ethan Forrest of the Indianapolis Metropolitan Police Department told the women they had to leave. Bradley and Lutz did not move, explaining that it was cold outside and they were waiting for a ride. Eventually, they abruptly stood up and walked toward the door, and as they were doing so, Lutz made a rude comment to Officer Forrest, who then asked for identification.

Lutz stated, "we don't have any ID you bitch." Tr. p. 65. Officer Forrest grabbed Lutz with a restraint hold and pulled her arms around her back. As Officer Forrest handcuffed Lutz, Bradley began advancing in an angry manner with her fist "cocked." Id. at 66. Officer Forrest put his arm out to stop Bradley and pushed her into Officer Corey Heiny of the Indianapolis Metropolitan Police Department, who arrived on the scene with Officer Forrest. When Officer Heiny grabbed Bradley around the wrist, "all hell broke loose," and Bradley began screaming about pain and the stitches. Id. at 117. Officer Heiny instructed Bradley to stop resisting, but Bradley was kicking her feet in a bicycle motion and waving her arms. Another officer arrived and helped to secure Bradley. During the encounter the women were screaming, yelling, and cursing.

3

Although the officers were eventually able to get the women to sit down, they stood up and "started all over again." Id. at 69. Bradley got one wrist out of the handcuffs and refused to be cuffed again by waiving her arms and pushing away from Officer Forrest.

On December 3, 2010, the State charged Bradley with Class A misdemeanor criminal trespass, Class A misdemeanor resisting law enforcement, and Class B misdemeanor disorderly conduct. A jury found Bradley guilty of criminal trespass and resisting law enforcement and found her not guilty of disorderly conduct. Bradley now appeals.

## Analysis

Bradley argues there is insufficient evidence to support her convictions. The standard of review for claims of insufficient evidence is well settled. We do not reweigh the evidence or judge the credibility of the witnesses, and we respect the jury's exclusive province to weigh conflicting evidence. Jackson v. State, 925 N.E.2d 369, 375 (Ind. 2010). We consider only the probative evidence and reasonable inferences supporting the verdict and affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

### I. Criminal Trespass

To convict Bradley of criminal trespass, the State was required to prove Bradley did not have a contractual interest in the property and knowingly or intentionally refused to leave the real property of another person after having been asked to leave by the other

4

person or that person's agent. See Ind. Code § 35-43-2-2(a)(2). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b). Bradley argues that she had a legitimate reason for being in the building and that she had no intent to violate the law.

Although Bradley may have initially been in the building for a legitimate reason, Martin testified that she told Bradley and Lutz the building was closed, and even Bradley testified that Martin told her the office was closing. Martin testified that she asked the women to leave, that they left, and that they came back inside. When Martin asked the women to leave the medical office building, it was after 7:00 p.m. and two of Martin's employees were the only other people in the building. This evidence shows that Bradley did not have a good faith belief that she was allowed to remain in the building and that she knowingly refused to leave after being asked to leave. To the extent Bradley points to conflicting evidence regarding whether Martin asked them to leave, she is asking us to reweigh the evidence, which we cannot do.

Bradley also argues that, even if Martin asked them to leave, Martin was not an agent of St. Francis because she was an employee of a cleaning company contracted to provide services. We have observed that "When one person gives another person authority to act on his behalf, an agency relationship is created." Glispie v. State, 955 N.E.2d 819, 822 (Ind. Ct. App. 2011). Martin testified that her employer, Executive Management Services, has a contract with St. Francis, that she has keys to the building and that her responsibilities includes keeping the suites secure. This evidence supports

5

the inference that Martin had the authority to act on behalf of St. Francis. There is sufficient evidence to support Bradley's criminal trespass conviction.[1]

## II. Resisting Law Enforcement

Bradley also contends the evidence is insufficient to support her resisting law enforcement conviction. A person commits Class A misdemeanor resisting law enforcement when he or she knowingly or intentionally forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties. I.C. § 35-44-3-3(a)(1). Bradley argues that there is no evidence she forcibly resisted Officer Heiny and that she pulled her arm away because of the pain she experienced.

Even if Officer Heiny's attempt to handcuff Bradley caused her pain and she reflexively pulled her arm away, there is other evidence that she forcibly resisted a law enforcement officer. Martin testified that, during Bradley's encounter with police, Bradley lunged toward Officer Forrest with her "fists blaring" as he attempted to restrain Lutz. Tr. p. 43. In describing Officer Heiny's attempt to restrain Bradley, Martin testified, "she gave him a pretty good fight. She did a lot of squirming and you know tried to get her arms loose and he tried to subdue her." Id. at 44. Martin stated that Officer Heiny "would get her down and she would get back up and he would get her down and she would get back up." Id. According to Martin, Bradley "did a lot of tussling and at no point did she stop." Id. at 45.

---

[1] On appeal, the State does not assert that the police officers were acting as agents of St. Francis.

6

This is consistent with Officer Forrest's testimony that, as he was handcuffing Lutz, Bradley advanced at him quickly in an angry manner with "her fist cocked[.]" Id. at 66. Officer Forrest testified that, during her encounter with Officer Heiny, Bradley was kicking her feet in a bicycle motion and that another officer assisted Officer Heiny in securing Bradley. After that, Bradley got a hand out of the handcuffs and again began "flaring" her arms and pushing away from Officer Forrest. Id. at 70. Similarly, Officer Heiny testified that Bradley "balled up her fists behind Officer Forrest and said, hell no, and came at Officer Forrest." Id. at 106. According to Officer Heiny, when he tried to restrain Bradley, she kept pulling her arm away and refused to sit down until, after several attempts, he put his foot behind her knee to make her sit down.

Contrary to Bradley's argument, this is not a situation involving passive inaction nor does the evidence suggest that her resisting conviction was based solely on her reflexively pulling her arm away based on the pain she experienced. The evidence shows that Bradley forcibly resisted, obstructed, or interfered with a law enforcement officer while the officer is lawfully engaged in the execution of the officer's duties. There is sufficient evidence to support Bradley's resisting law enforcement conviction.

## Conclusion

There is sufficient evidence to support Bradley's convictions for criminal trespass and resisting law enforcement. We affirm.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.